# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

MELISSA A. THOMAS, individually )
and as the representative of a class )
of similarly-situated persons, ) Case No.
)
)
Plaintiff, )
)
v. )
)
ABERCROMBIE & FITCH CO., ) CLASS ACTION
ABERCROMBIE & FITCH STORES, )
INC., and JOHN DOES 1-12, ) **JURY TRIAL DEMANDED**
)
Defendants. )

## CLASS ACTION COMPLAINT

Plaintiff, Melissa Thomas ("Plaintiff"), brings this class action complaint against defendants, Abercrombie & Fitch Co. ("A&F") and Abercrombie & Fitch Stores, Inc. ("A&F Stores") (collectively "Defendants"), to stop their sending of unsolicited text messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and to recover statutory damages and other relief for all persons who received such text messages. Plaintiff's allegations are based on information and belief and the investigation of her counsel,

except those pertaining to her own actions, which are based on personal knowledge.

## INTRODUCTION

1.    This case challenges Defendants' practice of sending commercial text messages to cellular/wireless/cell telephones ("cell phones") without prior, written consent and without providing the proper disclosures in violation of federal law.

2.    On behalf of herself and all others similarly-situated, Plaintiff seeks statutory damages for each violation of the TCPA.

3.    According to a 2012 study by the Pew Research Center, 69% of cell phone users who use text messaging receive unwanted text message spam, and "[o]f those texters, 25% face problems with spam/unwanted texts at least weekly." (Source: http://www.pewinternet.org/2012/08/02/mobile-phone-problems (last visited: November 20, 2015.)) Plaintiff receives unwanted text messages.

4.    Here, Defendants have transmitted unauthorized advertisements in the form of "text messages" to cell phones including

or introducing an advertisement for the purpose of encouraging the purchase of goods or services.

5.     Defendants' practice caused consumers actual harm, not only because the consumers were subjected to the aggravation that necessarily accompanies cell phone spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such spam, and such messages diminish battery life, waste data storage capacity, and intrude upon privacy and seclusion.

6.     In order to redress these injuries, Plaintiff, on behalf of herself and the Class of similarly situated individuals described below, brings this suit under the TCPA, which specifically prohibits unsolicited calls to cell phones.

7.     As will be discussed, Defendants have sent text messages to consumers without their prior express written consent to receive such text messages, without providing the disclosures required by the TCPA, and in a manner that violates the privacy rights of Plaintiff and members of the Class.

8.     The TCPA was designed to prevent calls and messages like the ones described within this Complaint, and to protect the privacy of citizens like Plaintiff.

9.     On behalf of the Class, Plaintiff seeks an injunction requiring Defendants to cease all unlawful text messages and Plaintiff seeks an award of statutory damages for herself and all other Class members, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

10.    Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the TCPA, a federal statute.

11.    The Court has personal jurisdiction over Defendants because each defendant conducts business within the State of Michigan.

12.    Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391 because Defendants committed a statutory tort within this District and a significant portion of the events giving rise to Plaintiff's claims took place here.

4

## PARTIES

13.   Plaintiff is an individual who resides within the Eastern District of Michigan.

14.   A&F is a Delaware corporation with its principal place of business in New Albany, Ohio.

15.   A&F Stores is an Ohio corporation with its principal place of business in New Albany, Ohio.

16.   The Doe Defendants are persons yet unknown to Plaintiff who directed the conduct at issue.

## FACTS

17.   Short Message Service ("SMS"), more commonly known as "text messaging," is a popular means for communicating among cell phone subscribers.

18.   The most common form of text messaging is person-to-person messaging. Text messages may also be sent by automated systems to facilitate the ordering of products and services from cell phones or for participating in contests or other marketing programs.

19.   Businesses continually seek cost-effective ways to mass market their goods and services. The popularity of cell phones and

texting has created a marketing opportunity for businesses whose telemarketing efforts are limited by restrictions on telephone, facsimile, and email solicitations.

20.  Unlike conventional advertising, text message advertising requires the use of technology (cell phones) owned and paid for by the text message recipients. Text message recipients often incur a charge for each incoming text message regardless of whether the message was authorized.

21.  Defendants transmitted text messages to cell phone users— including Plaintiff and the other members of the putative Class—to promote Defendants' products.

22.  A&F is "a specialty retailer that primarily operates stores and direct consumer operations ... [and] sells a broad array of products, including: casual sportswear apparel . . . under the Abercrombie & Fitch, Abercrombie kids, and Hollister brands." Source: http://www.sec.gov/Archives/edgar/data/1018840/000101884016000080/a201510-k.htm#sD812F25576E183641B7569B1324E1260.

23.  On or about April 14, 2016, Plaintiff received the following text message from Defendants on her cell phone:

6

> a&fkids: Reply confirms u agree to 15 markting msgs/mnth via automatd system & Terms: http://bit.ly/kidsTs Consent not required 4 purchase. Msg&DataRatesMayAply

[Misspellings and hyperlink in original message.]

24.    Plaintiff did not reply to the April 14 message.

25.    The next day, April 15, 2016, Plaintiff received another text message from Defendants on her cell phone:

> a&f kids: We have a new program! Text JOIN to 23543 to get an awesome surprise offer & to receive kids texts! See new Terms: http://bit.ly/kidsTs STOP to cancel

[Misspellings and hyperlinks in original message.]

26.    Plaintiff did not reply to the April 15 message.

27.    On Friday, April 22, 2016, Plaintiff received two more text messages from Defendants on her cell phone:

> a&f kids: Text JOIN to 23543 to get an awesome surprise offer & to receive kids texts from our new program! See new Terms: http://bit.ly/kidsTs STOP to cancel

> a&f kids: Reply confirms u agree to 15 markting msgs/mnth via automatd system & Terms: http://bit.ly/kidsTs Consent not required 4 purchase. Msg&DataRatesMayAply

[Misspellings and hyperlinks in original messages.]

28.    Plaintiff did not reply to the April 22 messages.

29.    Each of the four text messages Plaintiff received is a separate violation of the TCPA.

30.    Each of the four text messages Plaintiff received advertised Abercrombie & Fitch Kids: "a&f kids" or "a&fkids."

31.    Each of the four text messages purportedly originated from telephone number, 348-24. Such a telephone number is known as a "short code," which is a special type of number commonly used in advertisements and in connection with automated services.

32.    Plaintiff did not expressly consent to receive Defendants' autodialed telemarketing calls to her cell phone within the meaning of the TCPA.

33.    Defendants never clearly and conspicuously disclosed to Plaintiff that she consented to receive automated text calls from Defendants or that she was not required to consent to such calls in order to purchase goods or services from Defendants.

34.    Any person using their cellular phone to access the hyperlink in any of Defendants' 4 text messages referenced above—http://bit.ly/kidsTs—would be directed to part of the website abercrombiekids.com, where Defendants first offer more advertising:

"buy 5+ items, get 30% off! code: 25615." A true and correct copy of the pages accessed through the hyperlink is attached as Exhibit A (accessed by undersigned counsel on April 24, 2016).

36.    Defendants recently settled a class action about a prior text message advertising campaign, but that settlement does not apply to the text messages at issue in this case. *Chimeno-Buzzi v. Hollister Co., et al.*, Case 1:14-cv-23120-MGC (SD FL) Doc. 126-1 (Settlement Agreement, ¶ EE "Released Claims" arose "on or prior to the Preliminary Approval Date [December 18, 2015]"); Doc. 155 (Order Granting Final Approval).

## CLASS ACTION ALLEGATIONS

36.    Plaintiff brings this lawsuit as a class action on behalf of herself and all other similarly-situated persons (the "Class"). The Class is initially defined as follows: "All persons who received one or more unsolicited text messages in 2016 from Abercrombie & Fitch." (Plaintiff reserves the right to change the proposed class definition or to propose subclasses during this litigation.) Specifically excluded from the Class are the following persons: (a) Defendants and their respective affiliates, employees, officers, directors, agents, and representatives and their

immediate family members; (b) the judges who preside over this litigation, including the members of their immediate families.

37.    This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Rule 23 (a). Additionally, prosecution of Plaintiff's claims separately from the Class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

38.    **Numerosity/Impracticality of Joinder**: On information and belief, the Class is so numerous that joinder of all Class members is impracticable. The precise number of Class members and their addresses are unknown to Plaintiff, but can be obtained from Defendants' records or the records of third parties. On information and belief, the Class includes hundreds or thousands of persons nationwide.

39.    **Ascertainability:** The Class is clearly defined based on objective criteria, permitting Class members to be identified. On

information and belief, the members of the Class may be identified from Defendants' records or the records of third parties.

40. **Commonality and Predominance**: There is a well-defined community of interest among the Class members and common questions of law and fact predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from one Class member to another and may be determined without reference to the individual circumstances of any Class member, include, but are not limited to the following:

a.    Whether Defendants violated the TCPA by sending unauthorized text messages to Plaintiff and the other members of the Class;

b.    Whether the equipment Defendants used to send the text messages in question was an automatic telephone dialing system as defined by the TCPA;

c.    Whether such messages were sent to telephone numbers assigned to cell phones;

d.     Whether the means by which Defendants acquired Class members' cell phone numbers was in a written agreement, bearing the signature of the person called;

e.     Whether the means by which Defendants acquired Class members' cell phone numbers clearly and conspicuously informed Class members they may receive advertisements or telemarketing messages by means of an automatic telephone dialing system;

f.     Whether the means by which Defendants acquired Class members' cell phone numbers clearly and conspicuously informed Class members that they were not required to sign or enter into the agreement as a condition of purchasing any property, goods, or services;

g.     Whether Plaintiff and the other members of the Class are entitled to statutory damages under the TCPA;

h.     Whether Defendants' actions were knowing or willful and, if so, whether the Court should treble the statutory damages awarded to Plaintiff and the other members of the Class; and

i.     Whether Plaintiff and members of the Class are entitled to equitable relief, including but not limited to injunctive relief.

41. __Typicality__: Plaintiff's claims are typical of the claims of the Class because Plaintiff and all Class members were injured by the same wrongful practices. Plaintiff and the other Class members received text messages from Defendants without providing their express written consent and without receiving the proper disclosures required by the TCPA. Under the facts of this case, because the focus is on Defendants' conduct, if Plaintiff prevails on her claims, then the other Class members must necessarily prevail as well.

42. __Adequacy of Representation__: Plaintiff is an adequate representative of the Class because her interests do not conflict with those of the Class members he seeks to represent. Plaintiff has retained financially able attorneys who are competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff and her counsel will fairly and adequately protect the interests of the Class.

43. __Superiority__: A class action is the superior method for the fair and efficient adjudication of this lawsuit because individual litigation of each Class members' claims would be economically infeasible and procedurally impracticable. The individual damages

incurred by each Class member as a result of Defendants' wrongful conduct are too small to warrant the expenses of individual suits. The likelihood of individual Class members prosecuting separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual Class members do not have a significant interest in controlling the prosecution of separate actions. Furthermore, individualized litigation would create the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. Plaintiff foresees no difficulty in the management of this action as a class action. The Class members and their damages may be determined based upon information maintained by or available to Defendants.

## VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*

44.     Plaintiff incorporates the preceding paragraphs as though fully alleged herein.

45.     The TCPA provides in pertinent part as follows:

(b) Restrictions on use of automated telephone equipment

(1) Prohibitions

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States –

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice –
>
> . . .
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call ….

47 U.S.C. § 227 (b) (1) (A) (iii).

46.     The     Federal     Communications     Commission     ("FCC")

regulations also provide in pertinent part:

> (a)     No person or entity may:
>
> (2)     Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a) (1) (i) through (iii) of this section, other than a call made with the prior express written consent of the called party.

47 C.F.R. § 64.1200.

15

47.    Defendants' text messages to Plaintiff and the other class members included or introduced an advertisement or constituted telemarketing.

48.    The TCPA defines "telemarketing call," or "telephone solicitation," as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of ... goods, or services, which is transmitted to any person." 47 U.S.C. § 227 (a) (4).

49.    Defendants sent text messages to Plaintiff and the other class members for the purpose of encouraging their purchase of goods or services.

50.    The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227 (a) (1).

51.    Before sending a text message, the party sending the text message must obtain "prior express consent" from the called party. "Prior express consent" must:

- Be in the form of an agreement in writing, bearing the written or electronic signature of the person providing consent;

16

- Specify the telephone number to which the person is consenting to be called;

- Clearly and conspicuously authorize the company to call the person using an auto-dialer system or prerecorded message for telemarketing purposes; and

- Clearly and conspicuously disclose that consent is not a condition of purchasing goods or services.

47 C.F.R. § 64.1200(f) (8).

52.   Defendants made telephone solicitations, including but not limited to the text messages recited above, to the cell phone numbers of Plaintiff and other members of the Class in 2016.

53.   Defendants sent unsolicited commercial text calls to Plaintiff and the other members of the Class using an automated telephone dialing system.

54.   Each of the four text messages Plaintiff received is a separate violation of the TCPA.

55.   Defendants sent these text calls without first obtaining the called parties' prior express, written consent.

56.   Defendants knew or should have known they lacked the recipients' express, written consent to send these text calls.

17

57.    Defendants sent these text calls without first clearly and conspicuously disclosing to the recipients that they were providing consent to receive calls using an automatic telephone dialing system or an artificial prerecorded voice and that such consent was not required to purchase Defendants' property, goods, or services.

58.    Defendants violated the TCPA by sending these text calls to Plaintiff and the Class without first obtaining their prior express consent.

59.    Defendants violated the TCPA by not providing the required clear and conspicuous disclosures to Plaintiff and the Class.

60.    Defendants have harmed consumers by sending these text messages, not only because consumers were subjected to the aggravation that accompanies unsolicited wireless/cellular spam, but also because many consumers pay to receive text messages.

61.    The text messages sent to Plaintiff and the Class members were sent using equipment that had the capacity to store telephone numbers retrieved from Defendants' database and to dial such numbers. The equipment can also be programmed to generate and dial random or sequential numbers. By using such equipment, Defendants

was able to send text messages simultaneously to thousands of cell phone numbers *en masse* without human intervention.

62.   Defendants' text calls were made through the use of a short code dialing service and without the prior express written consent of Plaintiff and the Class members and without first providing the required disclosures.

63.   Defendants' conduct in sending such text messages violates 47 U.S.C. § 227 (b) (1) (A) (iii).

64.   Defendants' conduct in sending these text messages was a knowing and willful violation of 47 U.S.C. § 227.

65.   As a result of Defendants' violation, the members of the Class suffered actual damages by, *inter alia*, having to pay their respective cellular/wireless carriers for the text messages where applicable and, under 47 U.S.C. § 227 (b) (3) (B), are each entitled to, *inter alia*, a minimum of $500 in statutory damages for each violation of the TCPA, and up to $1,500.00 for each if Defendants' violations of the TCPA are determined to be knowing or willful.

66.   The Court should enjoin Defendants from sending future text messages without the written consent of the called party.

67.    The Court should declare invalid any purported agreement to arbitrate that Defendants secured through an unlawful text message. Defendants cannot use illegal means to secure arbitration agreements from cellphone users.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly-situated, demands judgment in favor of the Class and against Defendants as follows:

a.    That the Court find that this case may be maintained as a class action, appoint Plaintiff as the class representative, and appoint Plaintiff's counsel as counsel for the class;

b.    That the unlawful conduct alleged herein be declared to be illegal and in violation of the TCPA;

c.    That the Court award $500.00 in statutory damages for each violation of the TCPA;

d.    That the Court treble the statutory damages if it concludes that Defendants' violations were willful or knowing;

e.    That the Court enter an injunction prohibiting Defendants from engaging in the same or similar practices alleged herein;

20

f.     That the Court enter judgment against Defendants and in favor of Plaintiff and members of the Class;

g.      That Plaintiff and members of the Class recover their costs of the suit, and attorneys' fees as allowed by law; and

h.     That the Court award all other relief allowed by law or equity.

## PLAINTIFF DEMANDS A TRIAL BY JURY

Respectfully submitted,

MELISSA A. THOMAS, individually and as the representative of a class of similarly-situated persons,

By:  /s/ Phillip A. Bock

Phillip A. Bock
James M. Smith
BOCK, HATCH, LEWIS & OPPENHEIM, LLC
134 N. La Salle St,, Ste. 1000
Chicago, IL  60602
Telephone: 312-658-5500
Fax: 312-658-5555

Mark K. Wasvary
MARK K. WASVARY, P.C.
2401 W. Big Beaver Rd., Ste. 100
Troy, MI 48084
Telephone: 248-649-5667