# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Melissa N. Thomas,

     Plaintiff,  Case No. 16-cv-11467

v.          Judith E. Levy
           United States District Judge
Abercrombie & Fitch Stores, Inc.,
*et al.*,         Mag. Judge Mona K. Majzoub

     Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [37]

  This is a Telephone Consumer Protection Act ("TCPA") case. Plaintiff Melissa N. Thomas alleges that in April 2016, she received four unsolicited text messages from defendants Abercrombie & Fitch Co. and Abercrombie & Fitch Stores, Inc. (collectively, "A&F"). (Dkt. 5 at 9-10.) Pending is defendants' motion for summary judgment. (Dkt. 37.) Because there is no genuine issue of material fact that plaintiff consented to receive these messages, the motion is granted.

## I. Background

On April 24, 2016, plaintiff filed a putative class action alleging that A&F, along with up to twelve John Doe defendants, violated the TCPA by sending her and other customers four unsolicited text messages between April 14 and April 22, 2016. (Dkt. 5.) On April 14, 2016, she received this text message on her cellular phone:

> a&fkids: Reply confirms u agree to 15 markting msgs/mnth via automatd system & Terms: http://bit.ly/kidsTs Consent not required 4 purchase. Msg&DataRatesMayAply

(*Id.* at 9.)

On April 15, 2016, she received this message on her cellular phone:

> a&f kids: We have a new program! Text JOIN to 23543 to get an awesome surprise offer & to receive kids texts! See new Terms: http://bit.ly/kidsTs STOP to cancel

(*Id.*)

On April 22, 2016, she received these two messages on her cellular phone:

> a&f kids: Text JOIN to 23543 to get an awesome surprise offer & to receive kids texts from our new program! See new Terms: http://bit.ly/kidsTs STOP to cancel

> a&f kids: Reply confirms u agree to 15 markting msgs/mnth via automatd system & Terms: http://bit.ly/kidsTs Consent not required 4 purchase. Msg&DataRatesMayAply

(*Id.*)

The messages each came from a short-code telephone number, 348-24, controlled by A&F. Plaintiff contends that she did not consent to receive those text messages, and that their transmission violated the TCPA.

On July 15, 2016, defendants filed a motion to dismiss this case on the grounds that plaintiff consented to receive the text messages set forth above. (Dkt. 17.) Following oral argument on December 13, 2016, the Court converted the motion into one for summary judgment and granted plaintiff's motion for leave to take discovery regarding her purported consent to receive the text messages. On April 17, 2017, defendants filed a renewed motion for summary judgment. (Dkt. 37.)

Following discovery, the parties agree that on December 4, 2015, at 1:34 P.M., plaintiff texted the keyword "Style" to 348-24. (Dkt. 37 at 21, Dkt. 42 at 5-6.) Plaintiff had shopped at various A&F brands and used discounts from those stores before. (Dkt. 37-2 at 7-8.) Her text

was in response to a promotion on the Abercrombie Kids website.[1] The promotional webpage read:

> we've got something for you
> text **style**
> to **34824**
> for a surprise offer and a&f texts*
>
> *Msg & Data Rates May Apply. By texting the key word to 34824, you consent to receive up to ten (10) marketing text messages per calendar month that may be sent via an automated system. Consent to receive texts at the mobile number provided is not a condition of purchasing goods or services. Text or reply **STOP** to cancel, and **HELP** for help.
> See TEXT TERMS & PRIVACY POLICY

(Dkt. 37-4 at 15 (emphasis and capitalization in original).) Plaintiff claims that she does not remember seeing the disclaimer at the time. (Dkt. 42-1 at 26.)

The parties differ on what happened next. A&F provides internal records of its communications with plaintiff showing five seconds after plaintiff sent the "Style" text at 1:34 P.M., A&F's automated system responded with this message:

---

[1] A&F's brands and promotions use a variety of capitalizations and grammatical conventions apart from standard English. Those conventions will be mirrored when quoting materials from the record, but the Court will otherwise use standard English rules, such as capitalizing formal nouns.

> a&fkids: Reply YES to confirm u agree to marketing txts via automated system at # provided. Consent 2 receive txts not required 4 purchases.
> Msg&DataRatesMayAply

(Dkt. 38 at 2.) Twelve seconds later, A&F's records show plaintiff responding with "Yes." (*Id.*) Two seconds after that, the records show that A&F sent this message:

> a&fkids: You're signed up to texts! Msg&DataRatesMayApply. Receive up to 10 ongoing marketing messages per calendar month. Reply STOP to stop, HELP for help.

(*Id.*) A&F also provides records from its digital marketing database confirming that the initial "Style" text and the follow-up "Yes" text came from plaintiff's phone number ending in -4811, and that the four texts at issue in this lawsuit were sent to her phone number in April 2016. (Dkt. 39.)

Plaintiff, on the other hand, contends that she only sent one text, "Style," to A&F on December 4, 2016. (Dkt. 42 at 15-20.) In support of this, she provides unauthenticated records from her cellular service provider, AT&T. (Dkt. 42-2.) The records show that at 1:34 P.M., plaintiff texted 348-24, and that 348-24 responded six seconds later.

5

(*Id.* at 2.)[2] The records do not show any further communication between plaintiff and A&F on that day, nor do they show the content of the text messages sent between plaintiff and A&F. They do show that four additional text messages were sent from the A&F shortcode to plaintiff in April 2016. (*Id.* at 3-6.)

Defendants, in their renewed motion for summary judgment, argue that plaintiff's initial text message of "Style," coupled with the disclosures on the webpage containing the "Style" offer, constituted prior express written consent within the meaning of the TCPA. Even if it did not, they offer the second set of December 2015 texts explicitly consenting to receive up to ten text messages per month as the consent required under the TCPA. Plaintiff, in turn, argues that her phone records show the second set of texts was never sent, and that the first set of texts are insufficient to establish her express prior written consent.

Supplemental oral argument was held on this motion on October 4, 2017.

---

[2] The AT&T records list all times as "UTC," or Coordinated Universal Time. Accordingly, the records list the initial text from plaintiff at 21:34:20 UTC and the response at 21:34:26. (Dkt. 42-2 at 2.)

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.,* 305 F.3d 520, 526 (6th Cir. 2002)).

## III. Analysis

The TCPA bars any call, including a text message:

> [T]hat includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party.

47 C.F.R. § 64.1200(a)(2); *see also Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015) (noting that the Federal Communications Commission has determined that the TCPA encompasses text messages to wireless numbers).

Prior express written consent "means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

Defendant seeks summary judgment on the grounds of the affirmative defense of consent. "Where a defendant seeks summary judgment on an affirmative defense on which it will bear the ultimate burden of proof at trial, summary judgment is proper only if the record shows that [the defendant] established the defense so clearly that no rational jury could have found to the contrary." *Snyder v. Kohl's Dep't*

*Stores, Inc.*, 580 F. App'x 458, 461 (6th Cir. 2014) (internal quote marks and citation omitted).

This motion rests primarily on one issue: how to resolve the conflict between A&F's authenticated business records and plaintiff's unauthenticated cell phone records. A&F objects to plaintiff's records based on their lack of authentication, and argues that they "fall woefully short of admissible evidence that disputes that Plaintiff solicited and consented to receive text messages from Abercrombie." (Dkt. 37 at 32.) Plaintiff states that she obtained her cell phone records "by subpoena directly from AT&T." (Dkt. 42 at 18.) Other than that cursory assertion, at the time of the response, plaintiff provided no basis for the authenticity or completeness of the records attached to her response. Plaintiff moved to file the affidavit AT&T's custodian originally provided with her phone records, which she did not provide to defendants or to the Court. (Dkt. 46.) The Court has denied that motion in an order issued contemporaneously with this one. (Dkt. 52.)

Fed. R. Civ. P. 56(c) permits a party to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." This 2010 amendment to the Federal

9

Rules of Civil Procedure did away with the old, stricter authentication requirement of Fed. R. Civ. P. 56(e). *See Ganesh v. United States*, 658 Fed. Appx. 217, 220 (6th Cir. 2016) (describing the requirements of the pre-amendment Rule 56(e)); Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment. However, "[o]nce an objection is properly made, the proponent must 'show that the material is admissible as presented or . . . explain the admissible form that is anticipated.'" *Mangum v. Repp*, 674 Fed. Appx. 531, 536-37 (6th Cir. 2017) (citing Fed R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

Plaintiff did not respond in her motion to A&F's objection that the unauthenticated cell phone records are inadmissible. At oral argument, plaintiff argued that under Fed. R. Evid. 803(6)(D), she could be considered the custodian of AT&T's business records, because they are records of her activity. However, a custodian must "be familiar with the company's recordkeeping practices." *United States v. Jenkins*, 345 F.3d 928, 935 (6th Cir. 2003). Plaintiff is not an AT&T employee, and has presented no evidence or argument that she is familiar with AT&T's recordkeeping practices and could certify the completeness and accuracy of the records she provided. Because plaintiff's phone records

are inadmissible, the Court cannot consider the unauthenticated phone records she attaches in support of her motion.

Plaintiff discarded the cell phone she used when she received the text messages at issue in this case roughly three months after litigation began due to screen damage, and she did not retain the relevant text message history that could support her claim. (Dkt. 42-1 at 9.)[3]

With the exclusion of plaintiff's cell phone text messaging records, A&F has presented evidence that plaintiff voluntarily texted the word "Style" to shortcode 34828 on December 4, 2015, and in response to a single permissible text message asking her to opt in to receiving up to ten text messages a month, she replied "Yes." In April 2016, plaintiff received four text messages from the same shortcode regarding updates to the texting program she had joined.

Plaintiff challenges the veracity of A&F's records by citing a portion of the deposition of Andy Kennemer, A&F's Vice President of Omnichannel Marketing. During his deposition, Kennemer was asked about what he sees or knows regarding successful transmission

---

[3] Plaintiff's records also fail to show the content of the communications between her and A&F, making it unclear which text messages the records actually purport to show.

whenever A&F sends or receives a text message using its mobile messaging platform, called Hello World.

> A. Okay. So I'm familiar with part of that transmission process to the point where when a message is initiated on the Hello World platform or from Abercrombie, that it normally travels via an aggregator.
>
> Q. Okay.
>
> A. And then it is delivered to the wireless carrier.
>
> Q. Okay.
>
> A. I have seen data relative to the point where the aggregator is documenting receipt and transmission of messages to a particular phone number. In this case, the Plaintiff's phone number. Beyond that, I have no visibility from the point of the aggregator to the end user device or the wireless carrier. It's their responsibility to, I presume, deliver that message at the end.

(Dkt. 42-5 at 22.) Plaintiff argues that, since mobile carriers actually transmit messages, and aggregators are "mere middle-men between content providers and mobile carriers," the best record of whether a text message was actually sent is a mobile carrier's records. (Dkt. 42 at 18.) However, as set forth in the Court's order denying leave to file the affidavit that was not included with her cell phone records (Dkt. 52),

plaintiff has failed to provide authenticated records from her carrier, and the only evidence available are the logs A&F has provided.

Plaintiff also argues that "Defendants could not deny that Hello World might produce erroneous results or false positives." (*Id.* at 19.) This statement mischaracterizes Kennemer's testimony. Defense counsel asked Kennemer repeatedly if Kennemer was aware of any errors in the Hello World record keeping system, and Kennemer said that he had no knowledge of any errors in any column in that system. (Dkt. 42-5 at 24.) Kennemer's testimony is not an admission that Hello World might produce erroneous results or false positives. Even if Kennemer had made that admission, it would still be insufficient, on its own, to call the reliability of the Hello World records into doubt.

A&F's records match plaintiff's allegations precisely regarding the April 2016 texts, and she does not now dispute at least the first two text messages sent and received on December 4, 2015. To create some issue of material fact as to whether the second text message exchange on that date, in which defendant's admissible records reveal she consented to receive up to ten texts per month, is accurate, plaintiff must provide

13

some evidence showing that the Hello World system actually could have generated a nonexistent exchange between her and A&F.

Even if the system generated the "You're signed up to texts!" confirmation without sending it, plaintiff has offered no evidence explaining how the "Yes" text from her phone that triggered the confirmation, responding to the permissible text message she concedes she did receive, could have been falsely generated. Because she has not provided her text message history from her phone or admissible records of her text messaging activity, the only evidence plaintiff has is her own deposition testimony. During her deposition, plaintiff stated only that she did not recall any text messages sent between her and A&F in December 2015, but she did not affirmatively deny that all four messages were sent. (Dkt. 42-1 at 23-24, 29.) Plaintiff testified that it was possible she deleted the December 2015 text messages. (*Id.* at 29.)

The record in this case contains unambiguous and uncontroverted evidence that plaintiff expressly consented to receive up to ten marketing text messages per month on December 4, 2015. Plaintiff's available evidence does not contradict that fact, and her testimony precludes her from arguing that she did not consent to receive the text

14

messages at issue in this lawsuit. There is no genuine issue of material fact, based on the evidence available to the Court, as to whether plaintiff consented to receive the April 2016 marketing text messages from A&F. Accordingly, summary judgment must be granted to defendants.[4]

## IV. Conclusion

For the reasons set forth above, it is hereby ordered that:

Defendant's motion for summary judgment (Dkt. 37) is GRANTED; and

This case is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: November 13, 2017　　　　　　s/Judith E. Levy
Ann Arbor, Michigan　　　　　　　　JUDITH E. LEVY
　　　　　　　　　　　　　　　　　United States District Judge

---

[4] The parties disagree about the interpretation of *In the Matter of Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (2015), and whether an exchange consisting only of the first two messages sent on December 4, 2015, coupled with the disclosures on A&F's website, would be sufficient to establish plaintiff's prior express written consent to receive further text messages. However, because the record shows that A&F received subsequent express written consent for up to ten text messages per month after those first two text messages were sent, the Court declines to reach the merits of this argument.

15

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 13, 2017.

s/Shawna Burns
SHAWNA BURNS
Case Manager
