## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MELISSA N. THOMAS, individually and as the representative of a class of similarly-situated persons,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ABERCROMBIE & FITCH CO., ABERCROMBIE & FITCH STORES, INC., and JOHN DOES 1-12,<br><br>　　　　　Defendants. | No. 16-cv-11467-JEL-MKM<br><br>Hon. Judith E. Levy<br><br>Mag. Judge Mona K. Majzoub<br><br>**CLASS ACTION** |

| | |
|---|---|
| Randall A. Juip (P58538)<br>Anthony D. Pignotti (P71100)<br>FOLEY, BARON, METZGER & JUIP, PLLC<br>38777 Six Mile Road, Suite 300<br>Livonia, MI 48152<br>Tel No.: (734) 742-1800<br>Fax No.: (734) 521-2379 | Michael J. Stortz (pro hac vice)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>580 California Street, Suite 1500<br>San Francisco, CA 94104-1036<br>Tel No.: (415) 765-9500<br>Fax No.: (415) 765-9501<br><br>Meredith C. Slawe (pro hac vice)<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>Two Commerce Square<br>2001 Market Street, Suite 4100<br>Philadelphia, PA 19103-7013<br>Tel No.: (215) 965-1200<br>Fax No.: (215) 965-1255<br><br>*Attorneys for Defendants Abercrombie & Fitch Co. and Abercrombie & Fitch Stores, Inc.* |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR DISCOVERY DURING STAY

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................1

II.   BACKGROUND ...........................................................2

    A.    The Court Grants Abercrombie's Motion to Stay This Action
Pending the FCC's Ruling on the Scope of the TCPA. ......................2

    B.    Plaintiff Seeks Expansive and Intrusive Discovery Before the
FCC Rules. ...........................................................4

    C.    The Evidence Already Before the Court Illustrates the
Speculative Nature of Plaintiff's Proposed Discovery. ......................6

III.  DISCUSSION ...........................................................9

    A.    Plaintiff's Discovery Proposal Is Premature and Contrary to the
Stay Order.............................................................9

    B.    Plaintiff's Proposed Discovery Is Overbroad, Unduly
Burdensome and Intrudes Upon Privacy Rights of Nonparties. .........12

    C.    Plaintiff's Proposed "Preservation Subpoenas" Should Be
Rejected. .............................................................17

IV.   CONCLUSION...........................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACA Int'l v. FCC*,
  885 F.3d 687 (D.C. Cir. 2018).....................................................................3, 9, 10

*Alexander v. Caraustar Indus., Inc.*,
  2011 WL 2550830 (N.D. Ill. June 27, 2011).......................................................14

*Asset Value Fund Ltd. P'ship v. Find/Svp, Inc.*,
  1997 WL 588885 (S.D.N.Y. Sept. 19, 1997) ................................................19, 20

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  No. 1:12-cv-04069 (N.D. Ill.).............................................................................15

*Bristol-Myers Squibb Co. v. Superior Court of California, San
  Francisco Cty.*,
  ___ U.S. __, 137 S. Ct. 1773 (2017)...................................................................20

*Bush v. Dictaphone Corp.*,
  161 F.3d 363 (6th Cir. 1998) ..............................................................................16

*Clay v. Cytosport, Inc.*,
  2016 WL 6082314 (S.D. Cal. Oct. 18, 2016).....................................................14

*Dominguez v. Yahoo, Inc.*,
  894 F.3d 116 (3d Cir. 2018) .................................................................................9

*In re Farsheedi*,
  2009 WL 4572745 (N.D. Cal. Dec. 4, 2009).......................................................15

*Ferrari v. Gisch*,
  225 F.R.D. 599 (C.D. Cal. 2004)...................................................................19, 20

*First Am. Corp. v. Price Waterhouse LLP*,
  154 F.3d 16 (2d Cir. 1998) ..................................................................................20

*In re FirstEnergy S'holder Derivative Litig.*,
  219 F.R.D. 584 (N.D. Ohio 2004) .......................................................................18

*In re Fluor Corp. Sec. Litig.*,
    1999 WL 817206 (C.D. Cal. Jan. 15, 1999) ....................................................18

*Gucci Am., Inc. v. Bank of China*,
    768 F.3d 122 (2d Cir. 2014) ...................................................................20

*Marks v. Crunch San Diego*,
    904 F.3d 1041 (9th Cir. 2018) .................................................................10

*Mitchell v. McNeil*,
    487 F.3d 374 (6th Cir. 2007) ..................................................................11

*Sandusky Wellness Cntr. v. ASD Specialty Healthcare*,
    863 F.3d 460 (6th Cir. 2017) ..................................................................17

*In re Sealed Case*,
    141 F.3d 337 (D.C. Cir. 1998) .................................................................20

*Sherman v. Yahoo! Inc.*,
    2015 WL 5604400 (S.D. Cal. Sept. 23, 2015)..................................................15

*In re Sunrise Senior Living, Inc.*,
    584 F. Supp. 2d 14 (D.D.C. 2008) ...........................................................18

*Thomas v. Abercrombie & Fitch Co.*,
    301 F. Supp. 3d 749 ....................................................................4, 7, 9

*Thomas v. Abercrombie & Fitch Stores*,
    2017 WL 5289546 (E.D. Mich. Nov. 13, 2017)..............................................8, 13

**Statutes**

15 U.S.C. § 78u–4(b)(3)(B) ......................................................................18

Cal. Pub. Util. Code § 2891 ....................................................................15

Fed. R. Civ. P. § 23(a)(4) ......................................................................16

Fed. R. Civ. P. § 26(b)(1).................................................................1, 5, 13, 14

Fed. R. Civ. P. § 26(b)(2)(C)(iii) ...............................................................13

Fed. R. Civ. P. § 45 ............................................................................19

Fed. R. Civ. P. § 45(a)(1)(iii) ........................................................................20

Private Securities Litigation Reform Act of 1995 ...............................17, 18, 19, 21

Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227......................*passim*

**Other Authorities**

47 C.F.R. § 64.2001 *et seq.* ............................................................................15

16 Moore's Federal Practice - Civil § 108.125 (2018) ...........................................20

7 Newberg on Class Actions § 22:53 (5th ed.) ......................................................18

Public Notice, DA 18-493........................................................................3 10

Public Notice, DA 18-1014....................................................................3, 10

# I.   <u>**INTRODUCTION**</u>

Rather than limited discovery tailored to preserve specific evidence relevant to known class members, Plaintiff Melissa N. Thomas ("Plaintiff") seeks to embark on an overbroad and improper fishing expedition.  She proposes to inspect voluminous call detail records of unknown T-Mobile customers—none of whom have consented to such inspection—based on her speculation that those records, if compared to customers' text histories and monthly bill statements, might identify at least one other person who can assert a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").  Alternatively, Plaintiff proposes to serve a "preservation subpoena" as a prelude to pursuing the same overbroad and intrusive discovery, in the event the Federal Communications Commission ("FCC") were to rule in her favor on the threshold issue of the TCPA's autodialer definition.

The Court should reject Plaintiff's proposed discovery as premature, contrary to the Court's stay order, and otherwise beyond the scope of discovery permitted by Federal Rule of Civil Procedure 26(b)(1).  The Court should likewise reject Plaintiff's novel proposal for a preservation subpoena, until the FCC rules on whether the TCPA's autodialer definition might somehow extend to equipment such as alleged in Plaintiff's Amended Complaint.

## II.   BACKGROUND

### A.   The Court Grants Abercrombie's Motion to Stay This Action Pending the FCC's Ruling on the Scope of the TCPA.

Plaintiff alleges that Defendants Abercrombie & Fitch Co. and Abercrombie & Fitch Stores, Inc. (collectively, "Abercrombie") sent her text messages in April 2016 via an automatic telephone dialing system ("ATDS") without her prior express written consent.  *See* Am. Compl. [D.E. 5] ¶¶ 58, 62 (alleging use of ATDS).  She asserts a single claim for violation of the TCPA, for herself and a putative class defined as all persons "who received one or more unsolicited text messages in 2016 from Abercrombie & Fitch."  *Id.* ¶ 37.

Plaintiff's claim that an ATDS was used in violation of the TCPA's restrictions is not based on the statutory definition of an ATDS, which refers to equipment that "has the capacity – to store or produce telephone numbers to be called, using a random or sequential number generator[.]" 47 U.S.C. § 227(a)(1)(A).  Instead, Plaintiff relies on the FCC's 2015 Declaratory Ruling and Order ("2015 Declaratory Ruling"), which expanded the scope of the TCPA to encompass equipment with the potential capacity to be programmed to generate and dial random or sequential numbers.[1]  *See* Am. Compl. ¶ 62 (alleging that equipment could "also

---

[1] *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, 30 FCC Rcd. 7961, 7974

be programmed to generate and dial random or sequential numbers."); *id.* at n.7 (citing 2015 Declaratory Ruling).

In March 2018, the D.C. Circuit Court of Appeals reviewed the FCC's 2015 Declaratory Ruling and vacated those portions of the Ruling that expanded the TCPA to encompass equipment with the potential capacity to function as an autodialer. *See ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). Specifically, the D.C. Circuit held that the "capacious understanding of a device's 'capacity' [articulated in the 2015 Declaratory Ruling] lies considerably beyond the agency's zone of delegated authority for purposes of the *Chevron* framework." *Id*. at 698.

In May 2018, the FCC sought comments on the implications of the *ACA Int'l* decision on several issues arising under the TCPA, including the proper scope of the ATDS definition. *See* Public Notice, DA 18-493, CG Docket Nos. 18-152 and 02-278 (rel. May 14, 2018) (seeking comment, in light of *ACA Int'l*, on "how to more narrowly interpret the word 'capacity' to better comport with the congressional findings and the intended reach of the statute.").[2]

---

(2015) (finding "capacity" of calling equipment "includes its potential functionalities" or "future possibility").

[2] As discussed below, the FCC has since issued a second public notice seeking further comment on what constitutes an ATDS under the TCPA. *See* Public Notice, DA 18-1014, CG Docket Nos. 18-152 and 02-278 (rel. Oct. 3, 2018).

This Court had previously recognized that the FCC's interpretation of the TCPA is entitled to *Chevron* deference. *See Thomas v. Abercrombie & Fitch Co.*, 301 F. Supp. 3d 749, 758–59 ("[T]he Court must defer to a 'permissible construction' of a statute by an administrative agency entrusted with implementing the law so long as it is not 'arbitrary, capricious, or manifestly contrary to the statute.'" (citation omitted)).  Abercrombie accordingly moved to stay this action pending the FCC's anticipated ruling, on the ground that the ruling was "potentially dispositive" of this action. *See* Motion to Stay [D.E. 69] at 7.

After first indicating her opposition, Plaintiff agreed to a Stipulated Order granting Abercrombie's Motion to Stay. *See* Stipulated Order [D.E. 71].  Under the Stipulated Order, "all deadlines and discovery will be stayed except as agreed to by the parties or as ordered by the Court." *Id*. ¶ 2.  The parties requested a telephonic status conference for the Court's guidance "as to the propriety of limited discovery during the pendency of the stay." *Id*. ¶ 3.

## B.   Plaintiff Seeks Expansive and Intrusive Discovery Before the FCC Rules.

Notwithstanding her Stipulation to stay this action, Plaintiff now proposes to serve expansive discovery directed on both Abercrombie and a third party.  Her discovery proposal goes far beyond the "limited discovery" that was subject to further discussion under the Stipulated Order.  Indeed, her discovery proposal goes

4

well beyond the scope of discovery permitted under Federal Rule of Civil Procedure 26(b)(1).

Specifically, Plaintiff proposes to conduct at least two stages of voluminous discovery that go well beyond the parameters of her proposed class action and intrude on the privacy interests of nonparties.

*First*, even though her proposed class is limited to persons who did not consent to receive text messages from Abercrombie (*see* Am. Compl. ¶ 37), she would require that Abercrombie "turn over its records of [all of] the text numbers [sic] to which it sent the text messages at issue, identifying which ones are the T-Mobile customers." Plaintiff's Brief [D.E. 75] at 2. In addition, Abercrombie would "turn over any short codes used to send or receive the text messages." *Id*. at 2–3.

*Second*, Plaintiff would then subpoena T-Mobile for call detail records associated with the mobile numbers produced by Abercrombie, whether or not there is a record of consent associated with any mobile number. Although it is not clear from her Brief, Plaintiff apparently envisions multiple subpoenas modeled on the single subpoena she served on her wireless carrier (AT&T)—with the critical difference that the next round of subpoenas would seek call detail records associated with mobile numbers of scores of third parties. While Plaintiff acknowledges that these records "do not contain the content of the text messages," she nonetheless

speculates that the records would somehow show that the recipient of text messages did not provide prior express written consent. *See* Plaintiff's Brief at 3.

As for the privacy interests of T-Mobile customers in their own mobile account records, Plaintiff grudgingly acknowledges those interests, and the legal and practical risks inherent in disclosing such records without the prior consent of such customers. She proposes "in the alternative" that the Court allow her to serve one or more preservation subpoenas that apparently would not require T-Mobile to produce the records at this time but instead would broadly instruct the carrier "to retain the records of its monthly accountholders on the list from April 2016 to present." *Id.* at 3.

## C. The Evidence Already Before the Court Illustrates the Speculative Nature of Plaintiff's Proposed Discovery.

If Plaintiff's discovery proposal appears speculative and incomplete, that is because it is based not on the actual experience of any known class member but rather her own tortuous and lawyer-driven efforts to preserve her individual claim—in the face of Defendants' robust evidence showing that Plaintiff twice provided her prior express written consent to receive text messages from Abercrombie.

As the Court will recall, after filing this lawsuit, Plaintiff discarded the evidence in her possession that would be most germane to her TCPA claim—i.e., her iPhone and associated data on her iTunes account, which would provide the complete history of text messages between Plaintiff and Abercrombie's short code

in December 2015.  *See Thomas*, 301 F. Supp. 3d at 757 (Plaintiff "does not have the telephone she was using at the time, and she did not save the data from that telephone.").  Then, after having alleged in two Complaints that Abercrombie's text messages were unwelcome, Plaintiff abruptly reversed course, when confronted at deposition with the evidence of her many purchases and interactions with Abercrombie.  Plaintiff suddenly disclaimed any recollection of these interactions, including any memory of reviewing the TCPA-compliant disclosures on Abercrombie's promotional webpage that contained the keyword and short code that Plaintiff used to initiate the text dialogue with Abercrombie. *See id*. (quoting disclosures that served as the basis for this Court's initial grant of summary judgment).

Plaintiff's sudden memory loss and decision to discard her iPhone meant that she could not directly rebut Abercrombie's robust evidence of her consent.  As the Court will recall, that evidence, including extracts from Abercrombie's vendor's database and the aggregator's database, showed that Plaintiff twice consented to receive text messages after receiving the requisite TCPA disclosure.  In response, Plaintiff turned to her monthly bill statements and call detail records from her wireless carrier to argue that there was a discrepancy in the two datasets, sufficient to show a triable issue of fact as to her individual claim. *See Thomas*, 301 F. Supp. 3d at 758.

7

While the Court has allowed her individual claim to proceed on that attenuated basis, Plaintiff has provided no reason to presuppose that any other person would make any similar claim. Indeed, her Brief confirms that she has no information that there is any other person who received unsolicited texts from Abercrombie in 2016. For its part, Abercrombie has presented the Declaration of Andy Kennemer, Vice President of Omnichannel Marketing, and then presented Mr. Kennemer for a full day of deposition, wherein he testified as to Abercrombie's TCPA-compliant process for enrolling customers in its text programs. This evidence was presented to the Court on summary judgment (D.E. 17-3, 42-5), and the Court fully credited that evidence in granting Abercrombie's motion. *See Thomas v. Abercrombie & Fitch Stores*, 2017 WL 5289546, at \*5 (E.D. Mich. Nov. 13, 2017) (granting summary judgment based upon uncontroverted evidence of Plaintiff's prior express written consent).

Plaintiff studiously ignores all of this evidence and proposes instead to rifle through call detail records of T-Mobile's month-to-month customers, regardless of whether that customer provided prior consent. She fails to identify any basis from which to extrapolate from her own claim to any other customer, much less T-Mobile's month-to-month customers, and can assert only that Abercrombie's records of customer consent are "wholly unreliable and useless." Plaintiff's Brief at 3. Yet this Court has repeatedly rejected her prior assertions along these lines, first

by granting summary judgment, and then, even when granting reconsideration, rejecting Plaintiff's claim that Abercrombie's records were not reliable.   *See Thomas*, 301 F. Supp. 3d at 757 ("Plaintiff argues that cellular service provider records are inherently more accurate than defendants' marketing communications database, but she offers no reason why that is so.").

## III.   DISCUSSION

### A.   Plaintiff's Discovery Proposal Is Premature and Contrary to the Stay Order.

The Court should deny Plaintiff's proposal for discovery, as her Complaint no longer states a claim for relief, and it appears improbable that she will be able to amend to state such a claim once the FCC rules.

The original claim asserted in Plaintiff's Complaints from 2016 is, without question, no longer viable.   At that time, Plaintiff invoked the portion of the FCC's 2015 Declaratory Ruling that expanded the TCPA's restrictions to apply to equipment with the potential capacity to function as an autodialer.   *See, e.g.*, Am. Compl. ¶ 62.   However, the D.C. Circuit vacated this portion of the FCC's 2015 Declaratory Ruling in *ACA Int'l*, thereby fatally undermining Plaintiff's TCPA claim as currently pled.   *See, e.g.*, *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 119 (3d Cir. 2018) ("The D.C. Circuit therefore set aside the FCC's Declaratory Ruling[,]" such

that plaintiff "can no longer rely on his argument that [defendant's equipment] had the latent or potential capacity to function as an autodialer.").[3]

Nor is there any reason to believe that the FCC will revive that portion of the 2015 Declaratory Ruling, given the D.C. Circuit's categorical rejection of same in *ACA Int'l*. Instead, and as stated in its initial Public Notice, the FCC is considering "how to more narrowly interpret the word 'capacity' to better comport with the congressional findings and the intended reach of the statute." *See* Public Notice, DA 18-493 at 2. In its more recent Public Notice, the FCC confirmed that the D.C. Circuit's decision in *ACA Int'l* has "unambiguously foreclosed" any return to the "potential capacity" test articulated in the 2015 Declaratory Ruling. *See* Public Notice, DA 18-1014 at 2 (citing *ACA Int'l*, 885 F.3d at 692).[4]

---

[3] Plaintiff previously asserted that the D.C. Circuit did not invalidate prior 2003 and 2008 FCC rulings, and for that reason, her alleged TCPA claim remained viable under those earlier rulings, notwithstanding *ACA Int'l*. Her own authority disposes of that assertion. *See Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1049 (9th Cir. 2018) ("Because the D.C. Circuit exercised its authority to set aside the FCC's interpretation of the definition of an ATDS in the 2015 order, . . . and any prior FCC rules that were reinstated by the 2015 order, we conclude that the FCC's prior orders on that issue are no longer binding on us." (citations omitted)).

[4] Plaintiff cites two post-*ACA Int'l* decisions regarding the scope of the ATDS definition (Plaintiff's Brief at 9–10), but these cases are of little use to the Court at this stage, given that the FCC has not yet ruled. Indeed, the FCC asked for further comments regarding one of these cases (*Marks*), while stating in its Public Notice that the *Marks* decision would likely not alter its conclusion that *ACA Int'l* foreclosed any return to the "potential capacity" test articulated in the 2015 Declaratory Ruling.

It thus appears unlikely that Plaintiff will be able to state any viable claim under the TCPA, under the narrow interpretation of the ATDS definition that the FCC has forecasted. Unless and until she can state a viable claim, Plaintiff's request for voluminous discovery directed to Abercrombie and any third party is premature and improper. *See, e.g.*, *Mitchell v. McNeil*, 487 F.3d 374, 379 (6th Cir. 2007) ("In the absence of a cognizable claim, [plaintiffs] have no right to any discovery."). It is also contrary to the purpose of the stay, which, as Abercrombie explained in its moving papers, is to avoid the expense of discovery until the Court can determine, with the benefit of the FCC's ruling, whether Plaintiff could state any viable claim. *See* Motion to Stay [D.E. 69] at 12 ("[A] stay will benefit the parties by avoiding litigation and discovery expenses that may ultimately be unnecessary."). After initially disagreeing with the stay, Plaintiff ultimately stipulated to entry of the Order granting Abercrombie's Motion.

Plaintiff now belatedly argues that a discovery stay is "generally disfavored" and that her stipulation was "conditioned on the right" to limited discovery. Plaintiff's Brief at 4. That argument, however, cannot be reconciled with the express terms of the Stipulated Order, which provides that "all deadlines ***and discovery*** will be stayed except as agreed to by the parties or as ordered by the Court." Stipulated Order Granting Motion to Stay [D.E. 71] at ¶ 2 (emphasis added). As for potential discovery during the stay, any such discovery was specifically identified as "limited"

in the Stipulated Order (*id.* at ¶ 3), rather than the overbroad and intrusive discovery Plaintiff now proposes.

The Court should reject Plaintiff's discovery proposal in whole and maintain the stay of discovery until the FCC issues its anticipated rulings, which will most likely dispose of this action in its entirety.

**B.**    **Plaintiff's Proposed Discovery Is Overbroad, Unduly Burdensome and Intrudes Upon Privacy Rights of Nonparties.**

As set forth above, Plaintiff proposes two stages of discovery, with the first stage directed to Abercrombie, and the second stage directed to a wireless carrier (T-Mobile) that reportedly does not maintain call detail records for month-to-month accountholders, once those accounts are inactive.  Each stage would impose an untenable and improper burden and would be otherwise impermissible under the federal discovery rules.

As for the first stage, Plaintiff calls for Abercrombie to "turn over its records of the text numbers [sic] to which it sent the text messages at issue" without regard to carrier and to identify, out of this list of mobile numbers, "which ones are the T-Mobile customers."  Plaintiff's Brief at 2.  Her demand is grossly overbroad for at least two reasons.

***First***, the only subset of mobile numbers as to which Plaintiff has identified any possible preservation issue are those belonging to T-Mobile monthly accountholders.  There is no basis to demand that Abercrombie produce mobile

12

numbers associated with other carriers or any reason to impose on Abercrombie the expense and burden of such a wholesale production at this stage of the case.

**Second**, even if Plaintiff narrowed her request to T-Mobile numbers, the request would remain grossly overbroad, as it would consist of customers who are not members of the proposed class. Plaintiff does not represent, and cannot purport to represent, T-Mobile monthly accountholders who provided prior express written consent to receive Abercrombie text messages. Such persons have no ability to assert a claim for violation of the TCPA, even if Plaintiff could allege that an ATDS was used to disseminate the texts. *See Thomas*, 2017 WL 5289546, at *5 (granting summary judgment based upon Plaintiff's prior express written consent). Plaintiff recognizes at least this much, as she has consistently limited her proposed class to persons who received unsolicited texts from Abercrombie. *See* Am. Compl. ¶ 37.

It follows that Plaintiff's proposed discovery is outside the scope permitted under Federal Rule of Civil Procedure 26(b)(1), as the discovery seeks information regarding customers who are not members of the proposed class, and as such is not "relevant to any party's claim or defense" and is not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In this scenario, the Court, respectfully, is required by Federal Rule of Civil Procedure 26(b)(2)(C)(iii) to deny Plaintiff's proposal to conduct discovery beyond the parameters of her proposed class definition, as such discovery is not relevant to any claim or defense presented in this

action.  *See, e.g.*, *Clay v. Cytosport, Inc.*, No. 15-CV-00165-L (DHB), 2016 WL 6082314, at *3 (S.D. Cal. Oct. 18, 2016) ("In determining relevancy in a class action, . . . 'the Court is bound by the class definition provided in the Complaint.'" (citation omitted)); *id.* at *6 (finding that discovery was appropriate only as to the subset of products identified in class definition); *see also Alexander v. Caraustar Indus., Inc.*, No. 11 C 1007, 2011 WL 2550830, at *4 (N.D. Ill. June 27, 2011) (narrowing discovery to "issues relevant to the class of Chicago employees").

Plaintiff's proposed second stage of discovery is even more misguided. Plaintiff proposes the extraordinary step of subpoenaing the call detail records of scores of T-Mobile month-to-month customers, based only on her speculation that one or more of these records might reveal a discrepancy similar to the discrepancy identified in the call detail records from her carrier.  This proposal must be rejected, on several grounds.

*First*,  the discovery would be well beyond the scope of discovery as defined by Rule 26(b)(1), as it would seek the call detail records of T-Mobile customers who are not members of the proposed class, and is disproportionate to the needs of the case.  On that basis, the requested subpoenas must be denied as beyond the scope of permissible discovery under Rule 26(b)(1).  *See Clay*, 2016 WL 6082314, at *3; *Alexander*, 2011 WL 2550830, at *4.

14

*Second*, the subpoena would represent a wholesale intrusion on the privacy interests of T-Mobile's monthly accountholders as relates to their call detail records. These privacy interests arise under state and federal law. *See, e.g.*, Cal. Pub. Util. Code § 2891 (limiting disclosure of and access to telephone records absent consent of account holder); Federal Customer Proprietary Network Information Regulations, 47 C.F.R. § 64.2001 *et seq.* (prescribing rules safeguarding customer proprietary network information). Courts routinely enforce these privacy interests in the face of requests for discovery of same. *See, e.g.*, *In re Farsheedi*, No. C 09-3888 JF, 2009 WL 4572745, at *1 (N.D. Cal. Dec. 4, 2009) (denying right to appeal ruling that T-Mobile properly refused to comply with a subpoena for records pursuant to Cal. Pub. Util. Code § 2891); *Sherman v. Yahoo! Inc.*, No. 13CV0041-GPC-WVG, 2015 WL 5604400, at *6 (S.D. Cal. Sept. 23, 2015) (rejecting Plaintiff's request to issue subpoena to AT&T for records because "cellular carriers have refused to turn over similar records pertaining to California customers in TCPA cases based on the right to privacy established by California Public Utilities Code section 2891(a)(4)" (internal footnote omitted)); *Birchmeier v. Caribbean Cruise Line, Inc.*, No. 1:12-cv-04069 (N.D. Ill.), Dkt. Nos. 288 (Mar. 20, 2015) and 302 (May 28, 2015) (holding that Cal. Pub. Util. Code § 2891 required court to deny plaintiff's motion to compel T-Mobile's compliance with subpoena for subscriber records).

Plaintiff has no response to any of these privacy interests of T-Mobile monthly account holders, other than to dismiss them as "minimal." Her own practice in this case shows the contrary. Her own filings before the Court show that Plaintiff heavily redacted her own telephone number and her own call detail records, based on her statement that such data was "private information" warranting extensive redaction. *See, e.g.*, Decl. of Plf. ISO Plf.'s Response to Mot. to Dismiss [D.E. 27] ¶ 6, and Ex. A thereto; *see also* Ex. B to Plf.'s Opp'n to MSJ [D.E. 42]. Plaintiff's refusal to acknowledge, much less honor, the interests of other customers in the privacy of their mobile numbers and account records is inexplicable and raises serious questions as to her and her counsel's ability to fairly and adequately represent the proposed class under Federal Rule of Civil Procedure 23(a)(4).

**Third**, Plaintiff has shown no basis to justify her proposed intrusion into the private call detail records of nonparties at this stage of the case. *See, e.g.*, *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998) (district court has obligation to balance discovery rights "with the need to prevent 'fishing expeditions.'"). Plaintiff has provided no basis from which to extrapolate from her call detail records to support a sweep of T-Mobile call detail records, and it is contrary to Abercrombie's robust evidence showing that customers provided TCPA-compliant consent in enrolling in its text programs.

16

Plaintiff simply assumes, without any evidentiary basis, that T-Mobile's monthly accountholders, like Plaintiff herself, discarded all records of their consent, and could only somehow make out a claim of non-consent through painstaking review of each customer's individual call detail records at some unspecified time prior to receipt of the April 2016 text messages at issue. That assumption, if ultimately accepted, would not warrant further discovery but would rather require dismissal of the class allegations, as the issues of consent and class membership could not be ascertained other than through painstaking review of individual call detail records. *See Sandusky Wellness Cntr. v. ASD Specialty Healthcare*, 863 F.3d 460, 472–74 (6th Cir. 2017) (affirming denial of certification of proposed TCPA class where identifying individual class members would require review of fax logs). At this stage of the action, when it has not even been determined whether Plaintiff's Complaint states a claim for relief, the Court should reject Plaintiff's proposal to conduct this overbroad and intrusive discovery.

## C.   Plaintiff's Proposed "Preservation Subpoenas" Should Be Rejected.

In recognition that her requested discovery would overstep the privacy interests of third parties, Plaintiff proposes in the alternative that the Court permit one or more "preservation subpoenas" on T-Mobile.

At the outset, Plaintiff fails to identify any statutory provision that permits preservation subpoenas outside of the specific context of securities class actions.

She cites to cases that allowed limited discovery for preservation purposes, but these cases arise under the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 ("PSLRA").  *See* Plaintiff's Brief at 5–7 (collecting cases). Plaintiff's reliance on the PSLRA is misplaced.

The PSLRA provides that "[i]n any private action ***arising under this chapter***, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss[.]"  15 U.S.C. § 78u–4(b)(3)(B) (emphasis added).  The PSLRA further provides that the statutory "automatic discovery stay may be lifted if 'particularized discovery is necessary to preserve evidence.'"  *In re Sunrise Senior Living, Inc.*, 584 F. Supp. 2d 14, 17 (D.D.C. 2008) (quoting 15 U.S.C. § 78u–4(b)(3)(B)).

However, "[t]he PSLRA, by its terms, is limited to actions filed under the federal securities laws and does not apply outside this context."  *In re FirstEnergy S'holder Derivative Litig.*, 219 F.R.D. 584, 586 (N.D. Ohio 2004).  Moreover, courts considering the scope of preservation discovery under the PSLRA have consistently held that such discovery is limited—by statute and by the limits of *in personam* jurisdiction—to parties and does not extend to nonparties.  *See* 7 Newberg on Class Actions § 22:53 (5th ed.) ("Courts have generally denied [] requests [for preservation subpoenas], typically finding either that the movant had failed to demonstrate undue prejudice or that the court lacked jurisdiction over the absent third parties."

(footnotes omitted)); *accord In re Fluor Corp. Sec. Litig.*, No. SA CV 97-734 AHS EEX, 1999 WL 817206, at *2 (C.D. Cal. Jan. 15, 1999) (denying plaintiffs' motion for leave to issue preservation subpoenas to nonparties, on ground that the PSLRA "does not add additional language permitting the court to reach third-parties in the discovery process nor does it authorize the court to place additional requirements on third-parties."); *Asset Value Fund Ltd. P'ship v. Find/Svp, Inc.*, No. 97 CIV. 3977 (LAK), 1997 WL 588885, at *1 (S.D.N.Y. Sept. 19, 1997) (refusing to order nonparties to preserve evidence during automatic stay because "[t]here is no statutory authority for such relief as [PSLRA] extends only to parties[,]" and "it is far from clear that this Court has any jurisdiction over [nonparties]"); *Ferrari v. Gisch*, 225 F.R.D. 599, 612 (C.D. Cal. 2004) (refusing to extend the PSLRA to impose preservation requirements on nonparties "[g]iven the jurisdictional concerns . . ."). Plaintiff provides no statutory basis, in the TCPA or otherwise, that would authorize a preservation subpoena on a third party in this action.

It is no answer to assert, as Plaintiff does, that these obvious objections to a preservation subpoena are "premature." Plaintiff proposes to serve subpoenas that would require a nonparty to preserve electronically stored records and/or other materials. Plaintiff's Brief at 3 (requesting "that Plaintiff be allowed to send a records preservation subpoena to T-Mobile to retain the records of its monthly accountholders on the list from April 2016 to present."). While it is unclear what

specific form this subpoena would take,[5] Plaintiff's request—subpoenas that compel actions by a nonparty—would require this Court to extend its jurisdiction to that nonparty, beyond the scope of Rule 45 and well-settled principles of personal jurisdiction. *See Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 141 (2d Cir. 2014) ("A district court, however, must have personal jurisdiction over a nonparty in order to compel it to comply with a valid discovery request under Federal Rule of Civil Procedure 45." (footnote omitted)); *see also First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 20 (2d Cir. 1998) (requiring that enforcement of subpoena "comport with due process[,] including "the assertion of personal jurisdiction"); *In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir. 1998) ("The principle that courts lacking jurisdiction over litigants cannot adjudicate their rights is elementary[.]"); 16 Moore's Federal Practice - Civil § 108.125 (2018) ("A nonparty witness cannot be compelled . . . unless the witness is subject to the personal jurisdiction of the court or other tribunal."); *accord Asset Value Fund Ltd. P'ship*, 1997 WL 588885, at *1; *Ferrari*, 225 F.R.D. at 612.  Plaintiff does not argue, and certainly has not shown, that this Court can exercise personal jurisdiction over T-Mobile, as that entity does

---

[5] The standard form of Rule 45 subpoenas—like the text of Rule 45 itself—contains no provision for a subpoena that compels preservation.  *See* Eastern District of Michigan Civil Action Forms, Subpoena Forms (available at https://www.mied.uscourts.gov/index.cfm?pageFunction=formList); *see also* Fed. R. Civ. P. 45(a)(1)(iii) (identifying permissible functions of Rule 45 subpoena).

not have its principal place of business in this District, is not incorporated here, and has no connection with Plaintiff's individual claim.  *See generally Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, ___ U.S. __, 137 S. Ct. 1773 (2017).  This Court should not issue an overbroad and intrusive subpoena for preservation purposes or otherwise, where it does not have the requisite authority or jurisdiction.

Against this backdrop, it is not credible for Plaintiff to suggest that a "preservation subpoena" should issue.  The provisions of the PSLRA that permit preservation discovery limit such discovery to parties and have no application outside of the context of PSLRA.  Plaintiff points to no equivalent provision under the TCPA that would authorize the Court to impose preservation obligations on third parties.  Such a subpoena would otherwise be improper due to jurisdictional limits, and the improbability that Plaintiff can state a viable claim for relief under the TCPA.

## IV.   **CONCLUSION**

For the foregoing reasons, Abercrombie respectfully requests that this Court deny Plaintiff's Motion.

Dated: November 30, 2018                    Respectfully submitted,

By  */s/ Anthony D. Pignotti*                By  */s/ Michael J. Stortz*
  Randall A. Juip (P58538)            Michael J. Stortz (*pro hac vice*)
  Anthony D. Pignotti (P71100)        Meredith C. Slawe (*pro hac vice*)

*Attorneys for Defendants*
*Abercrombie & Fitch Co. and Abercrombie & Fitch Stores, Inc.*

21

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2018, I electronically filed the foregoing Defendants' Opposition to Plaintiff's Motion for Discovery During Stay with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record listed in the caption above.

                      */s/ Michael J. Stortz*
                      Michael J. Stortz *(pro hac vice)*
                      AKIN GUMP STRAUSS HAUER & FELD LLP
                      580 California Street, Suite 1500
                      San Francisco, CA 94104-1036
                      Tel No.: (415) 765-9500
                      Fax No.: (415) 765-9501